HENRY MULCAHY and Others v. EMIL DIEUDONNE and Another.[1]

February 21, 1908.

Nos. 15,270—(66).

**Sale of Machinery—Guaranty to Work Satisfactorily—Acceptance.**

Defendants, retail dealers, sold to plaintiffs an engine and separator with a manufacturer's guaranty that if the engine failed it should be taken back, and either replaced by another or the consideration, which had been paid, returned. The engine and separator were delivered. The separator was retained. Another engine was substituted under a written contract agreeing that the engine "will develop horse power enough to handle your separator satisfactorily." Defendants were notified that

[1] Reported in 115 N. W. 636.

the second engine was unsatisfactory and that plaintiffs would not keep it. Plaintiffs afterwards attempted to return the engine. Defendants refused to accept it. Plaintiffs began one action, which was dismissed, and thereafter the present action to recover the consideration paid on the engine. It is *held*:

1. That the first action was not a bar to the second, inter alia, because the first was not directly, nor save by a violent construction, voluntarily litigated, because the complaint in the first action did not clearly seek to recover for damages for breach of warranty, and because, where no advantage, benefit, or remedy has been secured by means of a first action, and the adverse party has not been prejudiced thereby, and that action has been dismissed without determination on the merits, a subsequent action between the same parties concerning the same matter is not conclusively barred. Spurr v. Home Ins. Co., 40 Minn. 424, followed and applied.

2. That whether there were here one contract, supplemented by a second written agreement, or two separate contracts, was a question of intention to be determined in the light of the subsequent conduct of the parties, and that the trial court was justified in holding that the second contract was distinct.

3. That the second contract was not as a matter of law a warranty, for breach of which the contract could not be rescinded.

4. That, in case of an executory agreement to furnish a piece of machinery guaranteed to work satisfactorily, the person to whom it is furnished has the right to make a trial of it, reasonable as respects both time and manner, before formally accepting it, and the right to reject it, if it does not work satisfactorily to him. If, upon reasonable trial, it does not work satisfactorily, it is not necessary for him to return it (in the absence of an express agreement to that effect); but it is sufficient if, within a reasonable time, he notify the person furnishing it in substance that it does not work satisfactorily and that he declines to accept it. McCormick Harvesting Machine Co. v. Chesrown, 33 Minn. 32, 21 N. W. 346, followed and applied.

5. Where an aggregate sum is named as the consideration for the sale of several items of property, the actual consideration for each may be shown by parol.

6. No reversible error appears in this record as to the failure to return the engine within a reasonable time, nor as to the measure of damages prescribed by the charge of the court.

Action in the district court for Waseca county to recover $1,700, the value of a threshing engine. The case was tried before Buckham, J., and a jury which rendered a verdict in favor of plaintiffs for

$1,600. From an order denying their motion for a new trial, defendants appealed. Affirmed.

Defendants and appellants, retail dealers, on October 12, 1903, entered into a written agreement with the plaintiffs and respondents for the purchase by plaintiffs of a separator and gasolene engine. Plaintiffs gave notes for the agreed price, $2,600. The separator was retained. No controversy arose with respect to it. The engine proved unsatisfactory. In accordance with the manufacturer's usual warranty that such manufacturer would take back the engine and within ten days replace it by another engine or refund the consideration, if any, paid therefor, whether in notes or in money, the first engine was returned. Another engine was substituted for it on or about January 4, 1904, in accordance with a second written contract whereby defendants agreed with plaintiffs to see that the manufacturers would "fix up engine in regard to crack in cylinder; also that their warrant is fully carried out on this 25 horse engine next fall; * * * that engine will develop 25 horse power and everything defective in workmanship or material will be replaced free of charge * * * also that engine will develop horse power enough to handle your separator satisfactorily." On May 16, 1905, written notice was given to defendants that "the engine fails to be what you [the defendants] claimed it was going to be," and that plaintiffs "certainly cannot keep that engine."

In August, 1905, plaintiffs commenced an action against defendants. The complaint alleged defendants' warranty and the valuelessness in fact of the engine, and as to damages "that the consideration so paid by the plaintiffs for said threshing outfit has failed to the extent of $1,900, which is the sum paid by the plaintiff for said engine, and that the plaintiff is thereby damaged in the said sum of $1,900 by reason of the failure of the defendants to perform their agreement with it." Subsequently the action was dismissed before trial. Plaintiffs kept the second engine until December 31, 1905, when, as they insist and defendants deny, they returned the engine as unsatisfactory. Defendants refused to accept the engine, and never asserted physical possession of it.

The present action to recover the consideration paid for the engine was commenced in 1906. The jury returned a verdict for plaintiffs.

This appeal was taken from an order denying the defendants' motion for a new trial.

*E. B. Collester* and *John Moonan,* for appellants.

*P. McGovern,* for respondents.

JAGGARD, J. (after stating the facts as above).

1. One question presented by the assignments of error is whether plaintiffs' present cause of action is barred by their election in the first action to affirm the contract and to recover damages for the breach of warranty. No such defense was expressly asserted in the answer. It is not here involved, unless it was litigated voluntarily. The summons and complaint in the first action and its dismissal was admitted in evidence in course of the cross-examination of one of the plaintiffs. At the close of plaintiffs' case, defendant moved to dismiss, inter alia, because of such election. The motion was denied. The charge of the court sent the pleadings in both cases to the jury room, "to read and see what the parties claim. They are not very material in any event on the facts of the case. They might have some bearing on the questions of law." The court's memorandum also refers to the matter of election. Only by a construction violently liberal can this issue be treated as having been voluntarily litigated. A defense of election, moreover, was not made out, because the complaint in the original action did not contain sufficient allegations of damage to make the action one for recovery of damages for breach of warranty. Plano Mnfg. Co. v. Richards, 86 Minn. 94, 96, 90 N. W. 120. That demurrable complaint was not clearly appropriate to an action for damages for breach of warranty nor for a return of the consideration. It had been, apparently, drawn on the theory that plaintiff could sue for the consideration paid on failure to perform, without returning or tendering the engine. See McCormick Harvesting Machine Co. v. Chesrown, 33 Minn. 32, 21 N. W. 846; Exhaust v. Chicago, 69 Wis. 454, 34 N. W. 509.

The natural view to be taken of the two pleadings is that plaintiffs sought by the second to correct the imperfect theory of the first in accordance with further study of the subject, by making the present clearly an action to recover the consideration paid. See Benjamin, Sales (5th Eng. Ed.) 429–436. "No advantage, benefit, or remedy

having been secured by means of [the first] action, nor the adverse party prejudiced, and that action having been dismissed without a determination on the merits," does not conclusively bar a subsequent action. Dickinson, J., in Spurr v. Home Ins. Co., 40 Minn. 424, 42 N. W. 206. And see Fuller-Warren Co. v. Harter (1901) 110 Wis. 80, 85 N. W. 698, 53 L. R. A. 603, 84 Am. St. 867. Defendants' contention fails, also, because of the consideration next set forth.

2. The second question presented is whether the contract constituted a mere warranty. If it was, it is clear that the mere breach of the warranty neither rescinded the sale nor gave the vendee the right to rescind. His remedy would have been to have sued for damages. Lynch v. Curfman, 65 Minn. 170, 68 N. W. 5. The theory of the trial court was that, whatever may have been the character of the original contract, all parties subsequently treated the transaction as involving two distinct contracts. The first was a closed understanding, under which the separator was retained. No objection was ever made to paying for it. From the admissions of the defendants and the history of the negotiations it appears a new agreement was made as to the engine, and an entirely different machine actually substituted for the one originally purchased. It is elementary that the determination of such a question depends primarily upon the intention of the parties, which must be interpreted in the light of their subsequent conduct. Such subsequent conduct in this case we are of opinion showed that in effect there was here not one modified contract, but there were two distinct contracts. Northwest Thresher Co. v. Hulburt, supra, p. 276, 115 N. W. 159. See Johnson v. Johnson, 3 B. & P. 162; Weston v. Downes, 1 Doug. 23a; Towers v. Barrett, 1 T. R. 133. Cf. Devaux v. Conolly, 8 C. B. 640; Mansfield v. Trigg, 113 Mass. 350.

We are also of the opinion that the trial court was not in error in refusing to adopt defendants' contention that the second contract was, as a matter of law, an executed sale on warranty. An examination of that contract, previously herein set forth quite fully, shows that it was susceptible of the construction that it resulted in an option to purchase the engine if satisfactory. No words transferring title to the vendee were used. The determining clause is the last one, which is consistent with the view that the option to purchase in-

volved the condition that the "engine will develop horse power enough to handle your separator satisfactorily." It is true that the term "warranty" is used. That, however, is not conclusive. It is also true that, for example, in J. I. Case Threshing Machine Co. v. McKinnon, 82 Minn. 75, 84 N. W. 646, and Warder v. Bowen, 31 Minn. 335, 17 N. W. 943, contracts not widely dissimilar have been construed as warranties. The issues in these cases, however, were not identical with those here presented. In Rose v. Meeks, 91 Iowa, 715, 59 N. W. 30, the evidence was not set out in full in the opinion. If, however, great stress is to be laid upon the term "warranty" in the second contract, as showing an option to return the engine bought, then effect must be given to the part of it wherein the defendants agree that the warranty of the manufacturer should be fully carried out. That warranty contemplated the return of the consideration in case of its breach and neglect to furnish another satisfactory machine. See Turnbull v. Seymour, Sabin & Co., 31 Minn. 196, 17 N. W. 278; Cf. Reeves & Co. v. Cress, 73 Minn. 261, 76 N. W. 26.

That is not, however, the controlling consideration. The refusal of the trial court to determine this question as a matter of law in accordance with defendants' contention was practically necessitated by the testimony as to the subsequent construction of that contract by the parties themselves. There was proof that defendants treated the engine as their own, and that plaintiffs acquiesced in their assertion of ownership and title in themselves. If all the proof had been treated as showing that there was a question of fact in this regard to be determined, and it had been assigned as error that the trial court, upon request, failed to submit such a question to the jury, the situation would have been essentially different. See section 5365, R. L. 1905; Mobile Fruit & Trading Co. v. Potter, 78 Minn. 487, 81 N. W. 392. The actual record presents no error on this point.

The law as applied to this state of facts is clear. "In the case of a sale of goods, to be accepted or paid for if 'satisfactory' the condition is a suspensory one; that is, it suspends the obligations of both parties until the purchaser's satisfaction is gained or waived. Hence the fact that the goods are not satisfactory does not give him a right to reject them and claim damages for breach of contract of the seller, as would be the case if there were a warranty that the goods were

fit for the purpose and they were not, nor to keep them and recover damages in an action for the purchase price." 9 Cyc. 624. The title remains in the vendor. See cases cited in note 47, and especially Campbell Printing Press Co. v. Thorp (C. C.) 36 Fed. 414, 418, 1 L. R. A. 645, and notes; Church v. Shanklin, 95 Cal. 626, 30 Pac. 789, 17 L. R. A. 207, and notes; Osborne v. Francis, 38 W. Va. 312, 18 S. E. 591, 45 Am. St. 859; Duplex v. Garden, 101 N. Y. 387, 4 N. E. 749, 54 Am. 709.

In McCormick Harvesting Machine Co. v. Chesrown, 33 Minn. 32, 21 N. W. 846, it was held: "In case of an executory agreement to furnish a piece of machinery guaranteed to work satisfactorily, the person to whom it is furnished has the right to make a trial of it, reasonable as respects both time and manner, before formally accepting it, and a right to reject it if it does not work satisfactorily to him. If, upon such reasonable trial, it does not work satisfactorily, it is not necessary for him to return it (in the absence of an express agreement to that effect); but it is sufficient if, within a reasonable time, he notify the person furnishing it in substance that it does not work satisfactorily, and that he declines to accept it."

3. Defendants further contend that plaintiffs could not rescind in part and affirm in part (9 Cyc. 438, par. v, note 83); that plaintiffs, having purchased a complete outfit, could not affirm as to the separator and disaffirm as to the engine; and that, inasmuch as the payment was for the entire outfit, the price cannot be apportioned.

This general principle of law is sound enough; but defendants' reasoning fails, because in this case there were two contracts, not one. The separator was retained under the original contract. The rights of the parties concerning the engine were determined by the second contract. There was an actual and expressed assent to the severance of the subject-matter. That the original consideration paid for the separator and another engine was entire presents no insuperable difficulty. It is elementary that, where an aggregate sum is named as the consideration for the sale of several items of property, the actual consideration for each may be shown by parol. 17 Cyc. 652, 653 And see Aultman & Taylor Co. v. Lawson, 100 Iowa, 569, 69 N. W. 865; Nichols & Shepard Co. v. Wiedemann, 72 Minn. 344, 350, 75 N. W. 208, 76 N. W. 41; McGrath v. Cannon, 55 Minn. 457, 57 N.

W. 150; Potsdamer v. Kruse, 57 Minn. 193, 58 N. W. 983. That principle clearly applies to the facts here presented. The evidence tended to show that the price fixed on the engine was $1,600 or $1,700. Defendants' answer in the first action alleged that the price to be paid for the separator was $1,000 and for the engine $1,600. The jury was properly left to determine the matter.

4. Defendants also contend that "plaintiffs did not rescind with-in a reasonable time, and that in any event such time was a question of fact, and should have been left to the jury to determine, and was not a matter of law for the court." From April, 1905, no talk was ever had about the engine and no use ever made of it. Plaintiffs did nothing till they brought suit in August. They kept the machine during the threshing season of 1905. No attempt was made to return it until December of that year. We are of the opinion that no error was shown in this matter. In May plaintiffs notified defendants that the engine did not work satisfactorily and that they refused to keep the engine. Apparently—for the record seems uncertain, and counsel have not made it clear—defendants wanted plaintiffs to wait until after harvest. In August plaintiffs brought suit. After that plaintiffs had no "talk with defendants on the subject, but before that lots of times." The answer did not plead by way of confession and avoidance a failure to notify defendants of failure of the engine to work satisfactorily and of unwillingness to retain it.

Defendants' argument and assignments of error do not present the true legal aspect of the questions arising. Their theory is that as a matter of law the most favorable possible view of plaintiffs' right was that they might have returned the engine and reinvested defendants with the title to the engine within a reasonable time. Even this, as has been pointed out, is controverted. A different construction has been placed by this court upon the situation as actually presented upon this appeal. See McCormick Harvesting Machine Co. v. Chesrown, 33 Minn. 32, 21 N. W. 846. Whether to have notified defendants in May that the engine was unsatisfactory and that they would not keep it was reasonable is not the question which defendants are arguing. Nor is that question the reasonableness of defendants' subsequent conduct. Apparently the controversy before the trial court was as to what constituted tender or return. The court

charged the jury in that regard. He submitted plaintiffs' right to return the engine at all. Plaintiffs argue that the question of reasonable time was included in that question. No request to charge, nor suggestion after it had been given, was made to the court. In view of the condition of this particular record (see authorities cited, supra), we feel constrained to conclude that the inadequacy of the charge in this regard did not constitute reversible error.

5. Finally, defendants insist that the case should be reversed, because no directions as to the manner of ascertaining damages were given by the trial court. No request on the subject was made by the defendants. While the court did not charge with absolute definiteness on this point, the inference which the jury would naturally have drawn from it was that plaintiff should recover a "separate price fixed on it at the time by the parties." This was a proper instruction. The verdict of the jury shows that it applied the correct measure of damages. The amount is less than the price fixed by the defendants, which is confirmed by the admission of their answer in the first suit.

Affirmed.